# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
                                          :
THOMAS VINCENT BULGER,                    :
                                          :
                         Plaintiff        :        CIVIL ACTION
                                          :          NO. 17-04181
       v.                                 :
                                          :
NANCY A. BERRYHILL,                       :
                                          :
                         Defendant        :
_____:

**Henry S. Perkin, M.J.**                              **September 28, 2018**

## MEMORANDUM

Plaintiff, Thomas Vincent Bulger ("Plaintiff"), brings this action under 42 U.S.C. § 1383(c)(3), which incorporates 42 U.S.C. § 405(g) by reference, to review the final decision of the Commissioner of Social Security ("Defendant"), denying his claim for disability insurance benefits ("DIB") provided under Title II of the Social Security Act ("the Act"). 42 U.S.C. §§ 401-433. Subject matter jurisdiction is based upon section 205(g) of the Act. 42 U.S.C. § 405(g). Presently before this Court is Plaintiff's Brief and Statement of Issues in Support of Request for Review (Dkt. No. 15) filed February 20, 2018, Defendant's Response to Request for Review of Plaintiff (Dkt. No. 20) filed May 23, 2018, and Plaintiff's Reply to Defendant's Response for Request for Review (Dkt. No. 21) filed June 4, 2018. Having reviewed and considered the contentions of the parties, the Court is prepared to rule on this matter.

## I.      PROCEDURAL HISTORY

On May 20, 2013, Plaintiff protectively filed an application for DIB (Record at 184-187), alleging disability since January 1, 2009, as a result of cardiac arrhythmia,

degenerative disc disease, and chronic obstructive pulmonary disease. (Record at 18, 48, 92, 97, 184, 203, 213, 237, 258.) The record indicates that the ALJ also considered the following conditions: generalized anxiety disorder, depression, history of alcohol abuse, hypertension, hyperlipidemia, tinnitus, hepatic steatosis (fatty liver), hypothyroidism, left hand tremor, allergic rhinitis, obesity, history of sarcoidosis, bursitis of the hip, and bilateral carpal tunnel syndrome. (Record at 22.) Plaintiff's earnings record shows that he has acquired sufficient quarters of coverage to remain insured through December 31, 2013, which is referred to as the date last insured. (Record at 18, 20, 43, 203, 237, 258.) Accordingly, in order to be eligible for DIB benefits, Plaintiff must prove that he became disabled on or before December 31, 2013. (Record at 18, 20; Finding No. 1.)

Plaintiff's claim for disability benefits was denied at the initial review level by letter dated October 4, 2013. (Record at 18, 92, 97-101.) Thereafter, Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). (Record at 18, 102, 103-106.) A hearing was held on June 5, 2015, at which Plaintiff, who was represented by counsel, appeared and testified. (Record at 18, 37, 39, 44-62 93-96, 110-111, 121-122, 180-182, 213.) An impartial vocational expert ("VE"), Christine Carrozza Slusarski, MA, also appeared and testified at the administrative hearing. (Record at 37, 39, 63-74, 248-249.) At the hearing, Plaintiff amended the onset date in his application, alleging that his disability began on September 2, 2012. (Record at 18, 43.)

Having considered evidence of Plaintiff's impairments, ALJ Linda Thomasson issued an unfavorable decision on September 25, 2015 in which she found that Plaintiff, given his residual functional capacity ("RFC"), was capable of performing past relevant work as a

communications technician/mechanic. (Record at 23-30, Finding Nos. 5-6.) Thus, the ALJ concluded that Plaintiff could not be found disabled within the meaning of the Social Security Act. (Record at 30-31, Finding No. 7.)

Plaintiff timely requested review of the ALJ's decision, which was denied by the Appeals Council on July 20, 2017. (Record at 1-5, 179-183, 256-257.) As a result, the ALJ's decision of September 25, 2015 became the final decision of the agency.

Plaintiff initiated this civil action on September 19, 2017, seeking judicial review of the Commissioner's decision that he was able to perform past relevant work as a communications technician/mechanic, and thus was not entitled to DIB. On June 7, 2018, the parties filed a Consent to Jurisdiction by a U.S. Magistrate Judge. (Dkt. No. 22.) On June 7, 2018, the Honorable Jeffrey L. Schmehl approved the consent and Ordered the referral of this case for final disposition in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Dkt. No. 23.)

## II.   FACTS

Plaintiff, born on September 2, 1957, was fifty-five years old when he protectively filed his application for DIB. (Record at 44, 92, 184, 203, 237, 258.) He completed two years of vocational school, and has past work experience as a communications technician/mechanic. (Record at 29, 45, 46-47, 64, 97, 196-202, 205-206, 214-215, 221-224.)

In addition to reviewing the transcript of the administrative hearing and the administrative decision in this case, this Court has independently and thoroughly examined all of the medical records and disability reports. We will not further burden the record with a detailed recitation of the facts. Rather, we incorporate the relevant facts in our discussion below.

## III.    LEGAL STANDARD

The role of this Court on judicial review is to determine whether there is substantial evidence in the administrative record to support the Commissioner's final decision. Any findings of fact made by the Commissioner must be accepted as conclusive, provided that they are supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence" is deemed to be such relevant evidence as a reasonable mind might accept as adequate to support a decision. Richardson v. Perales, 402 U.S. 389, 407 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). See also Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied, 113 S.Ct. 1294 (1993). Thus, the issue before this Court is whether the Commissioner's final decision of "not disabled" should be sustained as being supported by substantial evidence. Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards in evaluating a claim of disability. Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984). This Court's review of legal questions presented by the Commissioner's decisions is plenary. Schaudeck v. Comm'r of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents [him] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. § 423(d)(1). Each case is evaluated by the Commissioner according to a five-step process:

> The sequence is essentially as follows: (1) if the claimant is
> currently engaged in substantial gainful employment, []he
> will be found not disabled; (2) if the claimant does not

4

suffer from a "severe impairment," []he will be found not disabled; (3) if a severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last continually for at least twelve months, then the claimant will be found disabled; (4) if the severe impairment does not meet prong (3), the Commissioner considers the claimant's residual functional capacity ("RFC") to determine whether []he can perform work []he has done in the past despite the severe impairment - if []he can, []he will be found not disabled; and (5) if the claimant cannot perform [his] past work, the Commissioner will consider the claimant's RFC, age, education, and past work experience to determine whether []he can perform other work which exists in the national economy. See id. § 404.1520(b)-(f).

Schaudeck v. Comm'r of Social Sec. Admin., 181 F.3d 429, 431-32 (3d Cir. 1999). The claimant bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at the fifth step to establish that the claimant is capable of performing other jobs in the local and national economies, in light of his age, education, work experience and residual functional capacity. Poulos v. Comm'r of Social Sec., 474 F.3d 88, 92 (3d Cir. 2007.)

## IV. ALJ DECISION AND PLAINTIFF'S REQUEST FOR REVIEW

Plaintiff is alleging disability since his amended onset date of September 2, 2012, as a result of cardiac arrhythmia, degenerative disc disease, and chronic obstructive pulmonary disease. (Record 18, 43, 48, 97, 213.) In rendering her decision, the record reflects that the ALJ also considered the following conditions: generalized anxiety disorder, depression, history of alcohol abuse, hypertension, hyperlipidemia, tinnitus, hepatic steatosis (fatty liver), hypothyroidism, left hand tremor, allergic rhinitis, obesity, history of sarcoidosis, bursitis of the hip, and bilateral carpal tunnel syndrome. (Record at 22.) The ALJ, however, proceeded through the sequential evaluation process and determined that Plaintiff was not disabled as a result of his

impairments.[1]

      In his request for review, Plaintiff asserts the following issues:

> The ALJ's RFC is not supported by substantial evidence because she failed to properly apply the treating physician rule for Dr. Martin's opinion.  (Pl. Br. at 3-5.)

> The ALJ's RFC is unsupported by substantial evidence because it fails to consider all of Plaintiff's limitations.  (Pl. Br. at 6-8.)

The issues before this Court, however, are limited to whether the Commissioner's final decision of "not disabled" should be sustained as being supported by substantial evidence, and whether the ALJ applied the proper legal standards in evaluating a claim of disability.

## V.  DISCUSSION

      Disability is not determined merely by the presence of impairments, but rather on the functional restrictions the impairments place on an individual.  See Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991).  Plaintiff must establish that his impairments result in functional limitations so severe they preclude him from engaging in any substantial gainful activity.  See Dupkunis v. Celebrezze, 323 F.2d 380 (3d Cir. 1963); Gardner v. Richardson, 383 F. Supp. 1

---

[1]     The ALJ proceeded through all of the steps, finding that: (1) Plaintiff did not engage in substantial gainful activity during the period from his amended alleged disability onset date of September 2, 2012, through his date last insured of December 31, 2013; (2) through the date last insured, Plaintiff had the following severe impairments: cardiac arrhythmia, degenerative disc disease, and chronic obstructive pulmonary disease (COPD); (3) through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1; and (4) through the date last insured, Plaintiff had the residual functional capacity to perform medium work, except that he could frequently climb ramps, stairs, ladders, ropes and scaffolds, balance, stoop, kneel, crouch, and crawl, with frequent exposure to extreme cold extreme heat, wetness, humidity, fumes, odors, dusts, gases, poor ventilation, pulmonary irritants, and hazards, such as moving mechanical parts and unprotected heights.  (Record at 20-29, Finding Nos. 2-5.)  The ALJ concluded that given his RFC, Plaintiff was capable of performing past relevant work as a communications technician/mechanic.  (Record at 29-30, Finding No. 6.)  The ALJ concluded that Plaintiff was not disabled at any time from his amended alleged disability onset date of September 2, 2012 through December 31, 2013, the date last insured.  (Record at 30-31, Finding No. 7.)

(E.D. Pa. 1974).

In this matter, Plaintiff must also establish that he became disabled prior to the expiration of his insured status, i.e. his date last insured. <u>See</u> 20 C.F.R. §§ 404.131(a). As correctly noted by the Commissioner, Social Security's DIB program is similar to other insurance programs in that, to qualify, a claimant must have coverage, i.e., be fully insured, at the time of disability. 42 U.S.C. § 423(a), (c); 20 C.F.R. §§ 404.101(a), .131(a). The coverage period for an individual extends to his date last insured, which is the last day when he is eligible for DIB. <u>Id.</u> A claimant who first satisfies the medical requirements for disability only after his date last insured will not be entitled to DIB benefits. Accordingly, in this case, Plaintiff bears the burden of showing that he became disabled prior to December 31, 2013, the date on which his insured status expired. (Record at 18, 20, 43, 203, 237, 258.); C.F.R. § 404.131(a); <u>Matullo v. Bowen</u>, 926 F.2d 240, 244 (3d Cir. 1990).

This Court has reviewed the various sources of medical evidence, the submissions of counsel, and the testimony at the ALJ hearing. Based on this Court's independent and thorough review of the record and for the reasons that follow, we find that the ALJ has provided appropriate and adequate support for her decision. Accordingly, we conclude that the ALJ's decision is supported by substantial evidence of record, and will deny Plaintiff's request for relief.

### Substantial Evidence Supports the ALJ's Consideration of and Weight Assigned to the Medical Opinion of Daniel Martin, M.D.

Plaintiff argues that the ALJ erred by failing to afford controlling weight to the assessments of his treating physician, Daniel Martin, M.D. (Pl. Br. at 3; Record at 412-414.) Though Plaintiff specifically contends that controlling weight should have been given to Dr.

Martin's opinion, as more fully explained below, this assertion is not supported by substantial

evidence of record.

A treating source's medical opinion is entitled to significant weight where the

opinion is well-supported by medical evidence and not inconsistent with other substantial

evidence.[2] See 20 C.F.R. § 404.1527(d); see also Morales, 225 F.3d at 310, 317 (3d Cir. 2000);

Plummer, 186 F.3d at 429. An ALJ may reject a treating physician's opinion, where the opinion

is not supported by medically acceptable clinical and laboratory diagnostic techniques or is

inconsistent with other substantial evidence in the record. Fargnoli v. Halter, 247 F.3d 34, 43 (3d

Cir. 2001). Where a conflict in the evidence exists, an ALJ "is free to choose the medical

opinion of one doctor over that of another." Diaz v. Commissioner of Social Security, 577 F.3d

500, 505 (3d Cir.2009). However, "[w]hen a conflict in the evidence exists, the ALJ may choose

whom to credit but cannot reject evidence for no reason or for the wrong reason. The ALJ must

consider all the evidence and give some reason for discounting the evidence [he] rejects."

Plummer, 186 F.3d at 429.

When evaluating the weight to be afforded to a treating physician's opinion, the

ALJ must consider such factors as the length of the treating relationship, the nature and extent of

---

[2]     The regulations provide that one of the factors to be considered by the ALJ in evaluating medical
opinions is the supportability of the opinion. See 20 C.F.R. §§ 404.1527(c)(3) and 416.927(c)(3). Specifically, the
regulations provide that

> [t]he more a medical source presents relevant evidence to support an opinion,
> particularly medical signs and laboratory findings, the more weight we will give
> that opinion. The better an explanation a source provides for an opinion, the
> more weight we will give that opinion.

20 C.F.R. §§ 404.1527(c)(3) and 416.927(c)(3). Moreover, we note that forms requiring a physician only to fill in
blanks or check boxes are "weak evidence at best." Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993)(citations
omitted).

the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record evidence, and any specialization of the opining physician. 20 C.F.R. § 416.927(d)(2). If there is "conflicting and internally contradictory evidence," the opinion of a treating physician is not necessarily controlling. Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991). The ALJ, in refusing to credit the testimony of a treating physician, must base her decision to do so on objective medical evidence and not "solely on [her] own 'amorphous impressions, gleaned from the record and from [her] evaluation of [the claimant]'s credibility.'" Morales v. Apfel, 225 F.3d 310, 317-18 (3d Cir. 2000)(citations omitted). If the treating physician's opinion conflicts with other medical evidence, then the ALJ is free to reject or give less than controlling weight to that opinion, so long as the ALJ explains her reasons and makes a clear record. See Jones, 954 F.2d at 129.

Furthermore, the ultimate disability determination is reserved for the ALJ and a treating physician's opinion on that topic is not entitled to any special significance. Walker v. Barnhart, 111 Soc.Sec.Rep.Serv. 567, 568, 2006 WL 1789043, *2 (E.D. Pa. 2006), citing, 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); SSR 96-5p. In the matter of Brown v. Astrue, 649 F.3d 193, 197 n.2 (3d Cir. 2011), the United States Court of Appeals for the Third Circuit Court stated as follows:

> The law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity. *See Adorno v. Shalala*, 40 F.3d 43, 47-48 (3d Cir. 1994) (providing that "a statement by a plaintiff's treating physician supporting an assertion that [plaintiff] is disabled or unable to work is not dispositive of the issue" (internal quotation marks omitted)).

Id. In addition, the Commissioner's regulations recognize that the final responsibility for

determining a claimant's RFC is reserved to the Commissioner, who will not give any special significance to another opinion on this issue. 20 C.F.R. §§ 404.1527(d)(3), 404.1545(a); 416.927(d)(3), 416.945(a). For cases at the hearing level, the responsibility for determining a claimant's RFC rests with the ALJ. 20 C.F.R. §§ 404.1546, 416.946. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 362 (3d Cir. 2011) ("[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations"). It is the ALJ's exclusive duty, as fact finder, to make an RFC assessment, 20 C.F.R. §§ 404.1546(c), 416.946(c), and the ALJ is not required to seek a separate medical opinion in making this determination. Mays v. Barnhart, 78 F. App'x 808, 813 (3d Cir. 2003).

Plaintiff avers that the ALJ erred in evaluating the opinion of his treating physician, Daniel Martin, M.D. (Pl. Br. at 3-6.) On March 26, 2013, Dr. Martin completed a Residual Functional Capacity Questionnaire (Record at 412-414) where he indicated that he had been treating Plaintiff since March 12, 2013. (Record at 414.) Dr. Martin diagnosed Plaintiff with chronic low back pain, hypertension, atrial fibrillation, chronic obstructive pulmonary disease, and anxiety, noting Plaintiff's prognosis as fair. (Record at 412.) Dr. Martin further indicated that Plaintiff's symptoms from the foregoing diagnoses would be severe enough to interfere frequently with the attention and concentration required to perform simple work-related tasks. (Record at 412.)

Dr. Martin opined that Plaintiff was limited to standing/walking for fifteen minutes at a time, and for up to one hour in an eight-hour workday. (Record at 412.) With respect to sitting, Dr. Martin opined that Plaintiff was limited to sitting for sixty minutes at a time, and for up to two hours in an eight-hour workday. (Record at 412.) Dr. Martin checked

"yes" to the box indicating that Plaintiff required a job which would permit him to shift positions at will, and further noted that Plaintiff would be required to take six unscheduled breaks, each lasting for ten minutes, during an eight-hour workday. (Record at 412.) Dr. Martin opined that Plaintiff could never lift/carry twenty or more pounds, occasionally lift/carry ten pounds, and frequently lift/carry less than ten pounds. (Record at 413.) According to Dr. Martin, Plaintiff also had limitations in doing repetitive reaching, handling, or fingering. (Record at 413.)

Dr. Martin concluded that based on his experience with Plaintiff as a patient, Plaintiff was likely to be absent from work three or four times a month as a result of his impairments. (Record at 413.) Dr. Martin concluded the questionnaire by checking off a box indicating that Plaintiff was not physically capable of working employment consisting of an eight-hour day, five-days a week. (Record at 413.)

When rendering her decision in this matter, we note that the ALJ explicitly considered Dr. Martin's treatment notes and medical opinion relevant to the time period at issue by stating as follows:

> On March 12, 2013, the claimant established care with Daniel Martin, M.D. He reported feeling well with only minor complaints. He reported he exercised weekly and smoked one pack of cigarettes a day. Physical examination revealed he was alert and in no acute distress. Chest and lung exam revealed clear breath sounds and no adventitious sounds. He had regular heart rhythm and no carotid bruits. (Ex. B6F/6). He was diagnosed with anxiety for which he was prescribed Venlafaxine; COPD for which he was prescribed ProAir HFA; atrial fibrillation; and tobacco abuse. The claimant reported he had discontinued Rhythmol on his own due to finances. (Ex. B6F/7).

> The claimant returned to Dr. Martin on March 26, 2013. He reported his back was still bothering him and he was

there to have a form completed for his disability claim. Physical examination revealed normal mental status, normal gait and posture, normal heart sounds, normal chest and lung exam. (Ex. B6F/5). Dr. Martin reported an assessment including chronic back pain with three degenerated discs noted on x-ray two years previously, atrial fibrillation, hypertension, COPD, and anxiety (Ex. B6F/5).

Physical examination performed by Dr. Martin on April 24, 2013, was normal, including normal muscle strength (5/5) in all muscles (Ex. B6F/2). On July 9, 2013, the claimant returned to Dr. Martin for a routine visit. He complained of numbness in both ankles and both feet, dizziness, and arthritis in his hips. He reported alcohol use of two to three drinks per day. (Ex. Bl9F/ 16). Physical examination was normal, including normal muscle strength (5/5) in all muscles . Dr. Martin reported diagnoses of COPD, hypertension, chronic back pain, tobacco abuse, neuropathy in his legs for one week, and bursitis of the hip (Ex. Bl9F/l7).

.      .      .

Daniel Martin, M.D., opined on March 26, 2013, that the claimant is limited to less than a full range of sedentary work. Dr. Martin opined that the claimant's symptoms of low back pain, dyspnea especially with exertion, anxiety and depression would frequently interfere with the attention and concentration required to perform simple work-related tasks. He opined that the claimant would need to recline or lie down during an eight-hour workday in excess of the typical breaks and lunch periods. He opined that the claimant can walk one city block without rest or significant pain. He opined that the claimant can sit one hour at a time up to two hours of an eight-hour workday and he can stand/walk for 15 minutes at a time for up to one hour of an eight-hour workday. He would need a job which permits shifting positions at will from sitting, standing or walking. He would need to take unscheduled breaks during an eight-hour workday six times a day for 10 minutes. He can occasionally lift and carry 10 pounds and frequently lift and carry less than 10 pounds. He can use his arms for reaching

only 25 percent of the workday. He would likely be absent from work three to four times a month. Finally, he opined that the claimant is physically incapable of sustaining full-time employment. (Ex. B5F/4-5). Dr. Martin's opinion is given little weight. His opinion was given on a check-box form submitted at the request of the claimant's representative. The exertional and manipulative limitations are not supported by the record. He provided no rationale for his opinion regarding the claimant's absences from work. The record shows that Dr. Martin had seen the claimant on only one other occasion on March 12, 2013, prior to completing the residual functional capacity form. His opinion is inconsistent with his treatment records, which reveal normal physical examinations during the period at issue (Ex. B6F/2, 5, 6; B19F/ 17). His opinion that the limitations he reported had been present for five years is given very little weight because he indicated he had treated the claimant only since March 12, 2013 (Ex. B5F/6).

(Record at 24-25, 28.)

Having conducted a thorough review of the medical evidence, and contrary to Plaintiff's assertions, we conclude that the ALJ was correct in assigning little weight to the assessments of Dr. Martin. Specifically, we note that Dr. Martin's assessment was completed after having only treated Plaintiff on one occasion. (Record at 28, 414, 415, 418-422.) Accordingly, Dr. Martin was not necessarily able to, based on his own observations and treatment of the Plaintiff, "provide a detailed, longitudinal picture" of Plaintiff's impairments, which may, in certain other cases, warrant an assignment of controlling weight to treating physician opinions. See 20 C.F.R. §§ 404.1527(c), 416.927(c). In addition, we note that the Residual Functional Capacity Questionnaire (Record at 412-414) completed by Dr. Martin is essentially a "check-box" form. Forms requiring a physician only to fill in blanks or check boxes are "weak evidence at best." Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993)(citations

omitted).  See 20 C.F.R. § 416.927(c)(3) (providing for greater weight where a medical opinion is supported by relevant evidence, particularly medical signs and laboratory findings).

The administrative record also contains the disability evaluation and Medical Source Statement of Ability to Do Work-Related Activities (Physical) completed by state agency consultative examiner, Edward R. Stankiewicz, M.D. on August 15, 2013.  (Record at 440-450.) With respect to his musculoskeletal examination of Plaintiff, Dr. Stankiewicz noted as follows:

> The patient has pain in his lower back, bilateral hands, and his bilateral knees. The patient states that he has degenerative disc disease in his lower back and arthritis in his bilateral knees. He states that his hands and wrists cramp up daily due to his carpal tunnel. Mornings are the worst for his hands, lower back, and knees.  The patient states that he can not sit, stand, or walk for a long period of time due to his pain and he can not bend or climb due to his knee and lower back pain.
>
> .    .    .
>
> A limited neurologic exam was within normal limits. Tinel's and Phelan's tests were normal.  The patient was able to get on and off the examination table.  Sensation, motor power, and reflexes were normal. No extremity atrophy was noted. SLR test was normal in both the seated and supine positions. Range of motion was normal. The patient had a normal station and gait. Mentation appeared normal during the limited examination period.

(Record at 440.)

The ALJ thoroughly considered Dr. Stankiewicz's medical opinion by stating as follows:

> Edward Stankiewicz, M.D., examined the claimant on August 15, 2013, at the request of the Pennsylvania Bureau of Disability Determination.  The claimant reported he had stopped smoking two months previously.  He reported

drinking alcohol daily. He reported he experienced panic attacks at least three times a week. He stated he was not taking medication prescribed for PAF because he cannot afford it. He reported difficulty breathing on a daily basis despite use of inhalers. He reported pain in his low back and bilateral knees. He reported pain and cramping in his hands. (Ex. B9F/l). Physical examination revealed straight leg raising testing was normal in both seated and supine positions (Ex. B9F/2). Range of motion testing was within normal limits (Ex. B9F/ 10). X-rays of the lumbar spine dated August 16, 2013, revealed mild discogenic disease at L4-Sl which appeared to have slightly progressed since July 2011 (Ex. Bl0F/l). Follow-up physical examination by Dr. Stankiewicz on September 19, 2013, was normal other than expiratory wheezing with rhonchi bilaterally, increased heart rate at 100 per minute and increased bowel sounds (Ex. B11F/l).

.　　.　　.

As for the opinion evidence, Edward Stankiewicz, M.D., opined on August 15, 2013, that the claimant can lift and carry up to 20 pounds frequently and 50 pounds occasionally. He can stand four hours at one time up to eight hours of an eight-hour workday; walk four hours at one time up to eight hours of an eight-hour workday; and sit eight hours at one time up to eight hours of an eight-hour workday. He can frequently engage in use of the hands for reaching, handling, fingering, feeling, and pushing/pulling. He can frequently use his feet for operation of foot controls. He can frequently engage in postural activities. He can occasionally be exposed to pulmonary irritants. He can frequently be exposed to unprotected heights, moving mechanical parts, humidity and wetness, extreme cold, extreme heat, vibrations, and loud noise. He can frequently operate a motor vehicle. (Ex. B9F/4-9). Dr. Stankiewicz' opinion is given partial weight to the extent that it is consistent with the residual functional capacity described above for the claimant. Although he examined the claimant, the limitations on standing and/or walking four hours at one time and the foot control limits are not explained or supported by the record. The manipulative limitations he reported are contradicted by his

15

> examination findings and are not supported by other
> evidence of record.

(Record at 25, 27-28.)

In an effort to dispute the ALJ's finding that Plaintiff was capable of performing medium work, Plaintiff asserts that Dr. Stankiewicz opined that "plaintiff could only occasionally lift more than 20 pounds, which is not reflective of medium work." (Pl. Br. at 6.) Dr. Stankiewicz actually opined, however, that Plaintiff could occasionally lift and carry up to 50 pounds, and could frequently carry eleven to twenty pounds. (Record at 443.) Medium work is defined as work that involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567. Despite Plaintiff's argument to the contrary, therefore, Dr. Stankiewicz's opinion in terms of carrying and lifting items, does not significantly differ from the ALJ's RFC lifting and carrying restrictions as far as medium work is concerned.

In determining that Plaintiff was able to perform medium work with certain restrictions, the ALJ also considered the October 4, 2013 medical opinion of state agency physician, Dilip S. Kar, M.D. (Record at 80-91.) With respect to the assessment of Dr. Kar, the ALJ found as follows:

> Disability Determination Services medical consultant Dilip S. Kar, M.D., opined on October 4, 2013, that the claimant remained able to perform medium work with frequent postural activities, and avoidance of concentrated exposure to extreme cold, extreme heat, wetness, humidity, pulmonary irritants and hazards (Ex. B1A/9-10). Dr. Kar's opinion is given great weight because it is supported by an explanation and it is consistent with the record that shows relatively mild diagnostic findings.

(Record at 28.)

The ALJ, who is the finder of fact, was entitled to give greater weight to the opinion of Dr. Kar that Plaintiff is capable of a range of medium work.  (Record at 28, 87-89.)  See Jones v. Sullivan, 954 F.2d 125, 128-29 (3d Cir. 1991) (finding that the Commissioner reasonably relied upon the findings of a state agency physician in giving less than controlling weight to a treating physician's opinion).  See 20 C.F.R. §§ 404.1527(f)(2)(I), 416.927(f)(2)(I) (providing that state agency examiners are highly qualified and are experts in Social Security disability evaluation).

Plaintiff criticizes Dr. Kar's findings, asserting generally that he "did not even review the whole record."  (Pl. Br. at 7.)  It is clear from the record, however, that Dr. Kar did consider the medical opinions of both Drs. Martin and Stankiewicz before rendering his opinion as to Plaintiff's residual functional capacity.  (Record at 82, 85, 87, 89, 90.)  In fact, Dr. Kar assigned great weight to the medical opinion of Dr. Stankiewicz, noting that Dr. Stankiewicz agreed that Plaintiff was capable of performing medium work.  (Record at 82, 87, 89.)  Dr. Kar further noted that Plaintiff was independent with his activities of daily living, was able to cook, clean, drive, and attend church.  (Record at 85, 89.)  Dr. Kar noted that Plaintiff's back pain was conservatively treated with tramadol, and he was on inhalers for his COPD, which gave good results.  (Record at 89.)

Plaintiff does not specify which documents Dr. Kar allegedly failed to review. Regardless, we note that Dr. Kar's medical opinion was dated October 4, 2013, approximately two months prior to the date last insured of the Plaintiff.  As such, this Court finds it unlikely that Dr. Kar would have failed to review any medical records which would have been pertinent to the

time period at issue in this matter given that Plaintiff had to prove disability by December 31, 2013. Again, we find that the ALJ's decision to assign great weight to the findings of Dr. Kar was supported by substantial evidence, and the ALJ appropriately assigned Plaintiff a residual functional capacity for a range of medium work. (Record at 23-29.)

Plaintiff further asserts that the ALJ was required to consider all of the examination notes, including those dated after the date last insured. (Pl. Br. at 4.) Plaintiff does not specify, however, which treatment notes were allegedly missed by the ALJ.[3] In this case, based on our review of the administrative record, and the ALJ's decision, we find that the ALJ did not ignore treatment records after the date last insured, but rather considered them when making her determination that Plaintiff was not disabled prior to December 31, 2013. (Record at 24-29.) In fact, we find that there is at least one other record dated after the date last insured that further supports the ALJ's decision that Plaintiff was not disabled prior to December 31, 2013. As noted by the ALJ:

---

[3] To the extent that Plaintiff is referring to the findings of Alok Surana, M.D., we note that the ALJ explicitly considered this opinion, despite it being rendered after the date last insured. Plaintiff contends that "Dr. Martin's opinion is consistent with treating physician Dr. Surana's opinion" who "also opined that Plaintiff had substantial ambulatory limitations that restricted Plaintiff to a less than medium range of work." (Pl. Br. at 5.) This particular piece of medical evidence is a letter dated June 1, 2015 requesting that Plaintiff be excused from jury duty. The ALJ specifically considered this letter, noting as follows:

> In a letter dated June 1, 2015, Alok Surana, M.D., reported that he has treated the claimant for chronic back pain, ADHD, and depression. He opined that the claimant cannot sit for more than 30 minutes at a time "due to his condition." (Ex. B26F, B28F). Dr. Surana's opinion is given little weight because it is conclusory and he did not explain why the claimant cannot sit more than 30 minutes at a time. Such a limitation is not consistent with the mild findings in the diagnostic record regarding the spine. In addition, Dr. Surana's letter was given for the purpose of releasing the claimant from jury duty, rather than as a disability assessment.

(Record at 28-29.) We find that the ALJ acted in accordance with her responsibility to determine the credibility of this particular piece of medical evidence, and she gave specific, legitimate reasons for not accepting it.

On March 3, 2014, after the date last insured, the claimant reported worsening lumbar spine pain aggravated by bending, ascending and descending stairs, lifting, movement, sitting, walking and standing. Frank Giammattei, M.D., reported a diagnosis of lumbar spondylosis without myelopathy. Dr. Giammattei noted that the claimant had had no treatment for back pain other than Tramadol prescribed by his primary care physician. He noted that the claimant's x-rays showed only mild degenerative joint disease and he did not complain of radicular symptoms or numbness. He recommended treatment with over-the-counter Aleve and a course of physical therapy. (Ex. B20F/5). There is no evidence that spinal surgery has been recommended.

(Record at 25).

Under the regulations, an ALJ may consider numerous factors in assessing the opinion of a medical source, including the evidence supporting the opinion, the consistency of the opinion with the record as a whole, and other relevant factors. 20 C.F.R. §§ 404.1527(d), 416.927(d). In her decision, the ALJ thoroughly discussed all of the treatment notes and examinations which were pertinent to the time period at issue, September 2, 2012 through December 31, 2013. (Record at 23-29.) Based on our thorough review of the administrative record, we find that the ALJ acted in accordance with her responsibility to determine the credibility of medical evidence, and she gave specific, legitimate reasons for assigning little weight to the opinion of Dr. Martin.

**Substantial Evidence Supports the ALJ's RFC Determination.**

Plaintiff asserts that "the RFC does not properly account for Plaintiff's physical limitations, nor does it consider the opinion evidence that contradicts the ALJ's RFC." (Pl. Br. at 6.) Plaintiff appears to reassert that the medical opinion of Dr. Martin does not support the

ALJ's finding that Plaintiff was capable of performing medium work prior to his date last insured of December 31, 2013.  (Pl. Br. at 6-7.)

The ALJ must assess the residual functional capacity[4] that includes all of Plaintiff's limitations; however, a claimant's statements about his impairments will not alone serve to establish disability.  20 C.F.R. § 404.1529(a).  Subjective symptoms must be supported by objective evidence.  Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).  That is, the ALJ's RFC determination must include all of Plaintiff's limitations, but only those limitations that are fully credible, or supported by objective evidence need be included.  It is not necessary for the ALJ to include facts that are supported by a claimant's subjective testimony only.  Chrupcala, 829 F.2d at 1271.

With respect to her determination of the Plaintiff's RFC, the ALJ explicitly concluded that

> [a]fter careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except he could frequently climb ramps, stairs, ladders, ropes and scaffolds; balance; stoop; kneel; crouch; and crawl. He could have frequent exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dusts, gases, poor ventilation, pulmonary irritants,

---

[4]        Residual functional capacity measures

> what an individual can still do despite his or her limitations.  RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.

SSR 96-8p, 61 Fed. Reg. 34474.  An RFC assessment must be based on all of the evidence in the case record.  20 C.F.R. § 416.945(a); SSR 96-7p, 61 Fed. Reg. 34483; SSR 96-8p.

> and hazards, such as moving mechanical parts and
> unprotected heights.

(Record at 23-29; Finding No. 5.)

As noted in the preceding section, Plaintiff asserts that his impairments limit him to less than medium work. (Pl. Br. at 7-8.) However, to the extent that Plaintiff relies on the assessments of Dr. Martin, we have already concluded that the ALJ acted in accordance with her responsibility to determine the credibility of medical evidence, and gave specific, legitimate reasons for not accepting the opinion of Dr. Martin. The medical evidence covering the relevant period, September 2, 2012 through December 31, 2013, reflects overall normal findings that support the ALJ's assessment of Plaintiff's RFC, and do not support Dr. Martin's overly restrictive RFC assessment. (Record at 23-29.) Again, we find that the ALJ was entitled to give greater weight to the opinions of Drs. Stankiewicz and Kar, which adequately supported her RFC finding that Plaintiff is capable of a range of medium work.

In addition to the ALJ's summary of the medical evidence in the preceding section, we find that the ALJ's summary of the following medical evidence further supports her RFC finding of a range of medium work prior to the date last insured:

> The claimant's allegations of disabling impairment existing
> on or before December 31, 2013, are not fully supported by
> the treatment records and the objective evidence. His
> treatment has been conservative during the period at issue.
> The treatment records do not show that the claimant's
> condition was so severe that he could not have performed
> medium work with the other limitations described above as
> of December 31, 2013.
>
> Medical records reveal the claimant has a history of
> paroxysmal atrial fibrillation (PAF) and complaints of chest
> pain (Ex. B4F/2, 16, 21, 28). On April 15, 2008, Aymen

Alrez, M.D., reported that the claimant PAF was most likely secondary to alcohol abuse (Ex. B2F/35). Cardiac workup performed in February 2008, revealed normal coronary anatomy and normal left ventricular function (Ex. B4F/23). Dr. Alrez reported that the claimant did not require anticoagulation therapy at that time (Ex. B4F/27). On November 19, 2010, the claimant complained of a couple of episodes of atrial fibrillation lasting about one hour. Cardiac exam revealed a regular rate and rhythm. He had no edema in his extremities . EKG showed normal sinus rhythm, a left anterior fascicular block and left ventricular hypertrophy. Dr. Alrez started the claimant on Rythmol and aspirin 325 mg. (Ex. B4F/36).

.    .    .

On June 17, 2010, the claimant sought treatment for left hand tremor of six months' duration. He reported no difficulty with gait. It was noted that prescribed Effexor can cause tremor, but the claimant declined to wean off that medication. (Ex. B4F/47). Brain MRI performed on June 24, 2010 was normal (Ex. B4F/77).

The claimant has a history of low back pain not associated with any specific injury (Ex. B4F/43, B20F/5). Physical examination performed by Robyn M. Shor Conroy D.O., on November 18, 2010, revealed normal range of motion and strength and no joint enlargement or tenderness (Ex. B4F/41). X-rays of the lumbar spine dated July 21, 2011, revealed chronic discogenic disease at L5-Sl and sclerosis in the left iliac bone possibly the result of fibrous dysplasia. (Ex. B4F/37). The claimant sought treatment for worsening back pain on January 4, 2012. He denied numbness, tingling and weakness. He reported that Bayer Back and Body was no longer working and he was prescribed Mobic and Flexeril (Ex. B4F/43). He refused recommended physical therapy. He reported he had had good results from injections in the past. (Ex. B4F/45).

.    .    .

The claimant has reported a remote history of lung biopsy to assess for sarcoidosis (Ex. B24F/16). He has a history of

shortness of breath. In April 2008, he reported a history of smoking one pack of cigarettes per day for 30 years (Ex. B2F/34). CT scan of the chest performed on December 8, 2011, was unremarkable. (Ex. B4F/38). On August 15, 2013, the claimant reported he quit smoking two months previously (Ex. B9F/l). Respiratory examination was normal (Ex. B9F/2). Chest exam performed on September 19, 2013, revealed expiratory wheezing with rhonchi bilaterally (Ex. B11F/1). Pulmonary function testing in September 25, 2013, was normal with normal diffusion and no change following inhaled bronchodilators (Ex. B12F/1). On September 12, 2014, after the date last insured, the claimant reported he was smoking one pack of cigarettes daily (Ex. B19F/3). On January 22, 2015, the claimant reported to Igor Dorokhine, M.D., that his COPD was stable and he had never been seen by a pulmonologist. He reported he was smoking daily and he did not want to quit smoking (Ex. B24F/23).

.     .     .

The claimant has alleged that he experiences panic attacks, which exacerbate his atrial fibrillation condition. However, the treatment records suggest that both conditions were under adequate control through the date last insured. The record does not document that the claimant sought any mental health therapy for panic attacks through the date last insured. In addition, records pertaining to the period at issue through December 31, 2013, do not support the claimant's testimony regarding complaints of dizziness, knee pain, or significant shortness of breath. Although he reported shortness of breath, he continued to smoke cigarettes through the date last insured. It also appears that his back pain and symptoms of anxiety and depression were adequately controlled with prescribed medications.

(Record at 23-24, 25-27.)

Based on our review of the administrative record, we find that the ALJ thoroughly reviewed the evidence of record, including all medical opinions, especially those relevant to the time period at issue. This Court finds that the ALJ authored a thorough decision and sufficiently

explained her reasons for finding Plaintiff able to perform a range of medium work.

Accordingly, the ALJ's RFC determination is supported by substantial evidence of record.

## VI. <u>CONCLUSION</u>

Having reviewed the evidence of record, we find it is clear that substantial evidence exists to support the opinion and conclusions of the ALJ as to this Plaintiff's alleged disability. Plaintiff has failed to demonstrate that there was some medically determinable basis for an impairment that prevented him from engaging in substantial gainful activity prior to his date last insured of December 31, 2013. 42 U.S.C. § 423(d)(1). Accordingly, this Court will deny Plaintiff's request for review, and affirm the decision of the Commissioner of Social Security. An Order follows.